UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MICHAEL WILLIAMS,

                          Petitioner,

      -v-

SUPERINTENDENT, SULLIVAN CORRECTIONAL
FACILITY,

                          Respondent.

------------------------------------------------------------X

10 Civ. 1527 (PAE) (THK)

OPINION & ORDER
ADOPTING REPORT &
RECOMMENDATION

PAUL A. ENGELMAYER, District Judge:

On August 3, 2011, the Honorable Theodore H. Katz, United States Magistrate Judge, issued a Report and Recommendation (the "R&R") that Michael Williams's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, be denied. Dkt. 19.[1] On September 16, 2011, after an extension of time, petitioner, who is counseled, submitted objections to the R&R. Dkt. 21. By Order dated February 22, 2012, the Court directed respondent's counsel to respond by March 9, 2012, or the Court would consider the R&R without the benefit of respondent's submission. Dkt. 23. On February 29, 2012, respondent's counsel submitted a letter arguing that the R&R should be adopted in all respects. For the following reasons, the Court agrees with respondents, Williams's objections are overruled, and the petition is denied.

I.     Background

The Court assumes familiarity with the underlying facts and procedural history of this case, and respectfully refers readers to the thorough factual overview provided by Judge Katz in

---

[1] The R&R was addressed to the Honorable Richard J. Holwell, the District Judge to whom this case was then assigned. On October 20, 2011, the case was transferred to this Court's docket. Dkt. 22.

[1]

the R&R. *See* Dkt. 19 at 3–12. To provide context for this Opinion, however, it is useful to begin with a broad overview of the facts.

On August 15, 2002, Williams was convicted of second degree murder, two counts of robbery in the first degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree. On December 18, 2002, Williams was sentenced as a persistent violent felony offender to nine concurrent indeterminate sentences of 25 years to life in prison. The circumstances leading to that conviction and sentence are as follows:

In early April 2001, Williams hatched a plan with a Christopher O'Neill and Baron Reid to rob the home of Sary Igbara, the owner of Sammy's Fashions, a chain of fashion stores in the Bronx. The plan was to pose as Verizon telephone repairmen, gain access to the home, and plunder it, including a safe which was thought to be inside. On April 10, 2001, at Williams's direction, O'Neill posed as a Verizon repairman, gained entry to the Igbara home, and saw a large amount of cash in plain sight. The conspirators' plans that day were thwarted, however, by unexpectedly heavy traffic in the area.

The next day, April 11, 2001, the conspirators returned to the Igbara home. Williams, driving a maroon Mercury sedan, distributed guns to the conspirators. O'Neill and Reid entered the home, while Williams maintained cell phone contact outside. In the course of O'Neill and Reid's robbery, Sary Igbara was murdered and his wife robbed at gunpoint. The conspirators left the Igbara home and convened at a nearby diner parking lot; there a backpack was removed from the Verizon van and placed into the maroon Mercury driven by Williams. Soon after, O'Neill, left to drive the Verizon van back to the city, was apprehended. A statewide bulletin was issued for the maroon Mercury.

Williams drove the Mercury back to the Bronx, where he gave the backpack to a friend to put in his apartment for safekeeping. The police then found the Mercury and arrested Williams; the friend led police to the backpack, which contained the guns used in the robbery.

O'Neill, apprehended earlier, gave a full statement to the police. He admitted that he had participated in the plot, that Williams had orchestrated the plot, and that Williams had received "inside information" from disgruntled Igbara family members about the money and valuables kept at the house. A subsequent investigation of the Igbara family did not find any record of communications between the conspirators and Igbara family members.

On May 8, 2001, a Westchester County grand jury returned an indictment against Williams, charging him with the crimes of which he was later convicted. On May 18, 2001, prosecutors produced discovery to Williams's counsel, including a videotape of O'Neill's statement.

On July 20, 2001, Williams filed a motion seeking, *inter alia*, severance of his trial from that of his co-conspirators and suppression of his statements, physical evidence, and identification testimony. The court held in abeyance the motions for severance. It ordered *Mapp*, *Wade*, and *Huntley* hearings as to the various suppression issues.

On June 10, 2002, the court denied Williams's motions to suppress. It found that the police had probable cause to arrest Williams near the maroon Mercury, and therefore that the subsequently-recovered physical evidence and statements were also admissible. The Court also held a *Sandoval* hearing at which it admitted evidence regarding some, but not all, of Williams's prior convictions.

On July 23, 2002, Williams's trial began. It included the testimony from 48 witnesses, including O'Neill, a number of investigators from various agencies, the murder victim's wife,

[3]

who had been robbed at gunpoint, Melanie Coleman, a former consort of Williams whose phone he had borrowed and used during the murder, and Miguel Quezada and Yasser Abdel-Rahim, two employees of Igbara's fashion store. As noted, Williams was convicted on August 15, 2002.

Following the conviction, the Westchester County ADA prosecuting the case continued to investigate, attempting to tie up the loose end of who provided the conspirators with inside information. In late August 2002, the ADA recognized a name—Quezada—which appeared on a list of numbers called by Williams, using Coleman's phone, the day before the murder. The ADA subpoenaed Quezada's phone records. These detailed calls not only to Williams, but also to Yasser Abdel-Rahim, another Sammy's Fashion employee who testified at Williams's trial. On September 17, 2002, Quezada and Abdel-Rahim were arrested. They were charged with acting in concert with the conspirators in connection with the robbery of the Igbara home. That information was promptly disclosed to defense counsel.

Defense counsel then moved to set aside the verdict. They argued that the information about Quezada and Abdel-Rahim should have been disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied the motion. It found, *inter alia*, that the evidence of these employees' concerted action inculpated, rather than exculpated, Williams, because it was to Williams that the inside information was provided; that the prosecution had not been aware of this information during trial; and that, in any event, the information leading to the identification of Quezada and Abdel-Rahim was in Coleman's phone records, which had been produced in discovery to both sides.

On November 28, 2006, the Appellate Division, Second Department, affirmed Williams's conviction and the denial of his post-trial motion to set aside the verdict. *See People v. Williams*,

[4]

34 A.D.3d 856 (2d Dep't 2006). The Court of Appeals denied Williams leave to further appeal the conviction.

Williams later moved for an order, pursuant to N.Y. C.P.L. § 440.10, setting aside his conviction. On October 2, 2007, that motion was denied; on June 24, 2008, leave to appeal was denied. On June 10, 2009, Williams moved for a writ of error *coram nobis*; on October 20, 2009, that motion was denied; on February 16, 2009, leave to further appeal was denied.

On February 23, 2010, Williams, through counsel, filed this petition for a writ of habeas corpus. Dkt. 1. Williams argues that: (1) the prosecution committed a *Brady* violation by failing to disclose its investigation of Quezada and Abdel-Rahim; and (2) he received ineffective assistance of appellate counsel because (a) counsel failed to challenge the conclusions of the *Sandoval* hearing; (b) counsel failed to argue that trial counsel was ineffective in not arguing for suppression of evidence derived from an illegal stop and frisk; (c) counsel failed to argue that trial counsel was ineffective in failing to elicit that Williams invoked his right to counsel; and (d) of appellate counsel's cumulative errors.

On October 6, 2010, the respondent submitted a responsive affidavit and memorandum of law. Dkt. 13–15. On November 8, 2010, Williams filed a reply.

## II.     The R&R

In the R&R, Judge Katz rejected each of Williams's arguments and recommended that the petition be denied.

Judge Katz rejected Williams's *Brady* claim on multiple grounds. First, although evidence of Quezada's and Abdel-Rahim's involvement might have been used to impeach those witnesses, they were not "significant" government witnesses whose impeachment would have

materially affected the case against Williams so as to gave rise to a *Brady* obligation. *See* R&R at 15–17 (citing, *inter alia*, *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002)).

Second, the undisclosed fact of those witnesses' involvement in the robbery scheme did not exculpate Williams. Quite the contrary, it confirmed that Williams—the recipient of the "inside information" provided by those two witnesses—was guilty. *See* R&R at 19–20.

Third, the prosecution had not "suppressed" the identity of Quezada, nor the investigation of Abdel-Rahim. Rather, Quezada's name and phone number were on phone records produced to the defense, Abdel-Rahim was not yet the subject of investigation at the time of Williams's trial, and Williams, by virtue of his own orchestration of the scheme, "knew or should have known" about Quezada's and Abdel-Rahim's involvement before trial. *See* R&R at 20–22 (citing, *inter alia*, *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993)).

Fourth and finally, Judge Katz held, any information about Quezada or Abdel-Rahim was not "material" because uncovering the sources of the inside information used by the conspirators would not have undermined the overwhelming evidence showing what the conspirators *did* with that information—rob and murder Igbara. *See* R&R at 23–24.

As to Williams's ineffective assistance argument, Judge Katz noted that, under New York law, a trial court's *Sandoval* ruling is subject to broad discretion. *See Simmons v. Ross*, 965 F. Supp. 473, 480 (S.D.N.Y. 1997). He held that Williams's appellate counsel could not be faulted for failing to raise a tenuous argument challenging the exercise of such broad discretion, where any *Sandoval* error would be subject to harmless error analysis, and where the evidence of Williams's complicity in the Igbara robbery-murder was overwhelming. *See* R&R at 29–35.

Judge Katz also found that Williams's claim of an improper stop and frisk, arising out of the police stop of him near the maroon Mercury after the murder, was meritless as well, and that

counsel was therefore not ineffective for failing to raise that claim. In so ruling, Judge Katz held that the arresting officer had reasonable suspicion based on, in combination, the bulletin issued as to the maroon Mercury, including a specific license plate number; Williams's presence near the vehicle; the fact that Williams matched the description of the suspect relayed in the bulletin; and the fact that Williams attempted to leave the area upon seeing police officers. *See* R&R at 38. The fact that the bulletin had said that the suspect was wanted for murder and armed robbery further gave the officer reason to believe Williams was armed and dangerous, justifying a pat frisk. *See Arizona v. Johnson*, 555 U.S. 323 (2009).

Finally, Judge Katz rejected Williams's ineffective assistance claim based on appellate counsel's failure to call into question trial counsel's eliciting of testimony that Williams, during police interrogation, had invoked his right to counsel. *See* R&R at 40–42. Judge Katz observed that Williams's trial counsel had deliberately elicited that information in order to counter the negative impression left by a detective's testimony that the questioning of Williams had ended when Williams unilaterally terminated it. *See id.* at 41–42. And, even if that strategy fell below professional standards of reasonableness, Judge Katz held, the jury's knowledge that Williams invoked his right to counsel under interrogation was not reasonably likely to change the result of his trial in the face of overwhelming evidence of guilt. *Id.* at 42.

### III. Applicable Legal Standard

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02-cv-5810, 2009 U.S. Dist. LEXIS 58771, at *10 (S.D.N.Y. July

8, 2009) (citation omitted); *see also Wilds v. United Parcel Svc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003). But where specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation strictly for clear error. *See Kozlowski v. Hulihan*, Nos. 09-cv-7583, 10-cv-0812, 2012 U.S. Dist. LEXIS 15124, at *10 (S.D.N.Y. Feb. 7, 2012); *Brown v. Time Warner Cable*, No. 10-cv-8469, 2011 U.S. Dist. LEXIS 113624, at *7 (S.D.N.Y. Oct. 3, 2011); *Soley v. Wasserman*, No. 08-cv-9262, 2011 U.S. Dist. LEXIS 111522, at *11 (S.D.N.Y. Sept. 29, 2011); *Pinkney v. Progressive Home Health Servs.*, No. 06-cv-5023, 2008 U.S. Dist. LEXIS 55034, at *2 (S.D.N.Y. July 21, 2008). Here, Williams has made sufficiently specific objections as to each of Judge Katz's conclusions, triggering *de novo* review.

### IV. The Parties' Arguments

Williams objects to the full breadth of Judge Katz's conclusions in the R&R. As to his *Brady* claim, Williams argues that Judge Katz erred in concluding that: (1) the fact that Quezada and Abdel-Rahim were co-conspirators in the Igbara robbery did not exculpate Williams; (2) Quezada and Abdel-Rahim were not "significant" prosecution witnesses but instead offered testimony cumulative of other witnesses; (3) the prosecution did not "suppress" Quezada's full name or the investigation of Quezada and Abdel-Rahim; and (4) there was no reasonable probability that disclosure of the Quezada/Abdel-Rahim connection to the crime would have changed the outcome of Williams's trial, given the overwhelming evidence against him. Pet'r's Obj. 2–7.

[8]

As to his claim of ineffective assistance, Williams argues that Judge Katz erroneously recommended the denial of his petition, because the result of his appeal would have been different had appellate counsel: (1) challenged the alleged errors in the pre-trial *Sandoval* hearing; (2) challenged the trial court's decision not to suppress evidence obtained from the stop and frisk of Williams, which Williams claims was initiated without reasonable suspicion; or (3) claimed that trial counsel was ineffective, by virtue of having elicited that Williams's invocation of his right to counsel while in police custody. *Id.* at 8.

In opposition, respondent argues that Judge Katz: (1) properly concluded that the government did not "suppress" any information about Quezada and Abdel-Rahim; (2) correctly concluded that the involvement of Quezada and Abdel-Rahim in the offense was neither exculpatory nor sufficiently impeaching as to fall within *Brady*; (3) correctly found that that the overwhelming evidence renders any error as to non-disclosure of Quezada's and Abdel-Rahim's involvement harmless; and (4) correctly found that Williams's appellate counsel's strategic choices would not have altered the result of his appeal(s).

**V.   Analysis**

The Court has conducted a careful *de novo* review of the record, including the petition, Williams's memorandum of law in support of the petition, respondent's affidavit and memorandum of law in opposition to the petition, Williams's reply declaration and memorandum of law, the R&R, Williams's objections, and respondent's response. After that review, the Court agrees, for substantially the same reasons articulated in Judge Katz's thorough, cogent, and persuasive R&R, that Williams's petition must be denied. The Court therefore adopts the R&R in its entirety. Several of Williams's objections, however, merit individual discussion.

Williams argues that, in finding that the prosecution's alleged *Brady* violations immaterial, Judge Katz "downplay[ed]" the import of Quezada's and Abdel-Rahim's testimony relative to the overwhelming evidence of Williams's guilt. Pet'r's Obj. 5. Williams urges that, had Quezada's and Abdel-Rahim's true role been known, the jury might have concluded that either Quezada or another compatriot, Underwood—and not Williams—had been in the maroon Mercury outside the robbery. *Id.*

As Judge Katz aptly noted, that assertion is premised on "unfounded speculation." R&R at 23. Neither Quezada nor Abdel-Rahim offered any testimony placing any particular person (let alone Williams) at the scene of the murder. Nor did either witness provide the sole alibi testimony for any person whom Williams theorizes was the actual guilty party.[2] Instead, these witnesses testified primarily that Williams was familiar with Igbara's store, Sammy's Fashions; Abdel-Rahim also stated that he had heard a family member of Mr. Igbara's scream at the store upon learning of his death. *See* Trial Tr. 1015–25, 1102–12. It is difficult to view this testimony as concocted to cover up another's role; and even assuming *arguendo* that this testimony was thus concocted, it is difficult to grasp, had it been excised or wholly impeached, why the jury would have concluded that Quezada or Underwood, and not Williams, was the culpable conspirator in the Mercury.

Moreover, to arrive at the conclusion that disclosure of Quezada's and Abdel-Rahim's involvement would have potentially changed the outcome, Williams must circumnavigate the mountain of corroborating evidence linking him to the crime. This includes: (1) Coleman's

---

[2] Abdel-Rahim testified that Frank Underwood, a/k/a Frank White—whom Williams theorizes might have truly been in the maroon car outside Igbara's house—was present at Sammy's Fashions at the time of the murder. That testimony, however, was merely corroborative of Layla Igbara's similar testimony, and Layla Igbara is not alleged to have been in any way involved in the robbery plot. Thus, Abdel-Rahim's testimony is deprived of the significance derived from serving as Underwood's sole alibi witness.

[10]

phone, which was shown to be in Williams's possession (and nobody else's) and, according to cell tower records, was outside Igbara's home the morning of the murder; (2) the maroon Mercury, which eyewitnesses placed at the scene, and was found 10 feet from Williams (with its key in Williams's pocket), contained latex gloves of the same kind found in the Verizon van and used in the murder, and contained a phone company jacket; (3) the testimony of O'Neill, who confessed to the murder, and testified to Williams's involvement, and whose DNA was found on a coffee cup inside the maroon Mercury; and (4) the testimony of Kareem Slade, the Bronx friend, who stated that Williams had asked him to stash a backpack full of guns in a closet. Williams has not done so. Williams' argument is simply too tenuous, speculative, and reliant on counterfactuals to show that "no . . . fairminded jurist[] could disagree that the state court's decision conflicts with" *Brady* and its progeny; habeas relief must therefore be denied. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

Nor is there merit to Williams's claim that his appellate counsel was ineffective. To the extent Williams relies on the allegedly-errant *Sandoval* hearing, he fails to explain why counsel's raising this issue on appeal would have resulted in reversal. That claim of error would have been subject to harmless error analysis, and here, there was overwhelming evidence of guilt. *See People v. Grant*, 7 N.Y.3d 421, 424 (2006); *see also People v. Smith*, 18 N.Y.3d 588, 599 (2012) (Pigott, J., concurring); *People v. Brightley*, 56 A.D.3d 314, 316–17 (1st Dep't 2008). At best, appellate counsel would have achieved a finding of harmless error, justifying counsel's decision not to raise this point on appeal.

As to Williams's claim of an illegal stop and frisk, the Court is unconvinced that the result would have been different had his counsel raised this claim in the Second Department. The justification to stop Williams, and then to frisk him, was strong. It is undisputed that, at the

time the stop was made: (1) the police officer knew the make, model, color and license plate number of a car said to be involved in a murder; (2) a man (Williams) matching the description (both as to physical characteristics and clothing) of the car's driver was observed 10 feet away from the car; and (3) that suspect pointedly turned and walked away from the car upon seeing police officers. Considered together, these factors comfortably supply reasonable suspicion to support the stop. In any event, this evidence falls far short of supplying a basis on which this Court could find the decision below to unreasonably apply Supreme Court precedent.

As to the ensuing pat-frisk which led to the discovery of the car key (and to the search of the car), it was clearly justified: (1) the prior bulletin had alerted the officer to the likelihood that the suspect driving the maroon Mercury was armed and had just participated in a home invasion murder; (2) the officer believed he had found the suspect; and (3) the suspect did not remove his hands from his pockets until the officer commanded him to do so twice and drew a firearm. Under these circumstances, this Court would find the pat-frisk permissible upon *de novo* review. Viewing the decision below deferentially, as it must under Antiterrorism and Effective Death Penalty Act of 1996, *see* 28 U.S.C. § 2254(d)(1), Williams's argument is particularly unpersuasive as a basis for habeas relief.

As to Williams's argument that appellate counsel erred in failing to challenge trial counsel's decision to elicit Williams' invocation of his right to counsel, that argument, too, is unpersuasive. Trial counsel's decision to elicit that testimony was an understandable strategic choice to undermine the implication left by a prosecution witness's testimony as to why the questioning of Williams had come to a halt. Courts sitting in review of trial counsel's performance "are ill-suited to second-guess strategic decisions by trial counsel unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655,

[12]

660 (2d Cir. 1998) (internal quotation marks and additional citation omitted). Here, the record discloses a plausible justification for trial counsel's decision, and appellate counsel was, therefore, not ineffective in choosing not to raise it.

Finally, there is no merit to Williams's catch-all argument that appellate counsel failed to select winning arguments for appeal, favoring instead weaker arguments which served to deprive Williams of meaningful appellate advocacy. To prevail on that claim, Williams must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). This argument is derivative of Williams's other arguments; it requires the Court to find that the issues now raised by petitioner are more meritorious than those issues raised on appeal. That claim fails because, as Magistrate Judge Katz and this Court have both concluded, no alternative arguments would have prevailed. This Court therefore does not find that Williams's counsel omitted to pursue "*significant* issues" while "pursuing issues that were clearly and significantly weaker." *Clark*, 214 F.3d at 322. All of the arguments raised by Williams, both on his appeal and in this habeas corpus proceeding, are unavailing. Accordingly, habeas relief must be denied.

## CONCLUSION

For the foregoing reasons, the R&R is adopted in its entirety and the petition is denied. The Clerk of Court is directed to close this case. Because Williams has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2). The Court further certifies that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status will be denied for the purposes of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

                                                                 *Paul A. Engelmayer* (signature)
                                                                 Paul A. Engelmayer
                                                                 United States District Judge

Dated: July 5, 2012
       New York, New York

Case 1:10-cv-01527-PAE-KNF   Document 26   Filed 07/05/12   Page 14 of 14